Ashburs, J.
Two questions are presented:
I. Whether the district court erred in reversing the judgment of the court of common pleas, on the ground •of alleged misconduct of the jury ?
II. If it did, can the judgment of reversal be sustained on consideration of the whole evidence ?
I. The alleged misconduct of the jury: 1. By reason of its separation without permission from the couxt. 2. By reason of a conversation had by one of the jurors when •separated from his fellows.
After the jury had retired, in charge of an officer, to the jury-room, to consider the verdict, an ■ alarm of fine was heard. What appeared to be a dangerous fire broke out in a large block of buildings within less than one hundred .and fifty feet of the jury-room. Immediately “ there was •much noise in the court-house and halls ; the court-house *80 bell rang an alarm. Suitors, witnesses, members of the-bar, tl\e court, and officers, rushed in great haste out of the-court-house.” Seeing and hearing this, the jury rapped, in apparent alarm, and requested the officer in charge to let them out. lie did so. “ As soon as the fire was extinguished, all of the jurors returned to their room.”
W. W. McKnight says, in his affidavit, that he saw two- -or three of the jurors in the case on the outside of their jury-room, and without the presence of the officer in, charge, and standing on the steps in front of the courthouse, and mixing with the crowd on the outside, and that one of said jurors, to wit, A. Henderson, then spoke toafEant, and took him to the southwest corner of the courthouse, and asked affiant, “ How are we to get along without those books and papers ?” and said, “ They have not let-us have them.” Said juror then told affiant what papers-had been given them, but affiant can not now recollect what they were. Affiant then told said juror that lie-would have to do the best he could without them, and fold said juror that he could give him no advice, and told him that he could send up and have the court to advise: them.
Henderson, the juror, states that while out he saw McKnight, whom he knew to be an attorney at law, and,, without alluding to this or any other case, affiant inquired of McKnight whether a jury could obtain books and papers from the court after they had retired to consult. Affiant further says that nothing took place between him and. McKnight reflecting upon the merit of said case, but that the same was a mere inquiry as to the power of the court to furnish books and papers in the case as aforesaid.
Section 268 of the code provides : “ When the case is-Anally submitted to the jury, they may decide in court or retire for deliberation. If they retire, they must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court, subject to the discretion of the court to permit them to separate temporarily at night, and at their- *81 meals. The officer having them under his charge shall not suffer any communication to be made to them, or make any himself, except to ask them if they have agreed upon a verdict, unless by order of the court,” etc.
Section 297 provides that a new trial will be granted for:
“ 1. Irregularity in the proceedings of the court, jury, referee, or prevailing party, etc., by which the party was prevented from having a fair trial.
“ 2. Misconduct of the jury or prevailing party.”
1. Section 268 of the code, whether considered mandatory or directory merely, clearly requires that jurors remain together during the term of their deliberation, except when permitted to separate by order of the court. Yet, every departure from its letter will not be treated as an irregularity or misconduct on the part of the jury, such as to require the verdict to be set aside. When, from the irregularity or misconduct of the jury, there is reason to believe a fair trial has been prevented, or that the verdict is the result of bad motive, it should be set aside.
Many of the old rales, regulating the conduct of the jury after retiring to the jory-room to consider of their verdict, have been abrogated. They are now to be treated as reasonable men, and their conduct will be considered and judged in the light of the circumstances under which they acted, as well as the motives that influenced the conduct to be considered. The separation of this jury was an irregularity, and, technically, might be called misconduct. But what were the circumstances inducing the separation ?
While deliberating, an alarm of fire is heard in the jury-room. The fire is blazing in a large block of buildings, near the jury-room. The court, officers, attorneys, witnesses, all, in demoralized eagerness, are hastening from the court-house. The jurors see and hear all this, and; partaking of the general feeling of excitement, and perhaps curiosity, are let out of their jury-room — not to do an unlawful act — not with the purpose to violate their oath *82 or'smirch their verdict. The act of separation was technically a violation of the statute, but involved no moral wrong, and, in our opinion, could not in any degree tend to prevent a fair tidal or an honest verdict. 30 Vt. 467; 38 Maine, 137; 8 Texas, 157; Hilliard on New Trials, ch. 10, § 52, and cases cited; 1 G. & W. on New Trials, 84, 85.
2. We will now look at the alleged misconduct of the individual juror. What he said and did has been stated. Was it misconduct that will warrant a destruction of the verdict?
There are many cases on this question reported in the books. The rule most clearly established by the cases appears to be, that, however improper the conduct of the juror may have been, yet, if it does not appear to have in any degree been occasioned by the prevailing party, or any one in his behalf, and indicates no improper motive or bias in the mind of the juror, and the court can not discover that it either had or probably might have had an effect unfavorable to the party asking for a new trial, the verdict should not be disturbed. See 12 N. H. 474; 19 Ga. 303; 4 Fost. 9 ; 3 Fost. 301; 3 Ky. 8 ; 13 Mass. 318 ; 4 B. & A. 681; 1 Gallis. 360 ; 12 Pick. 496-517; 9 Conn. 47-51 ; Hilliard on New Trials, ch. 10, § 11, 2 ed.; 1 G. & W. on New Trial, 84, 85.
The misconduct of a jury in a civil case, which would render it necessary to set aside a verdict and grant a new trial, should be of such a character as to evidence bad intention. Wright v. Burchfield, 3 Ohio, 53, 56. The conduct of this juror was reprehensible, but evinced no bad intention.
The rule is laid down in Collier v. The State, 20 Ark. 36, quite clearly. It was there held : “ Though the jury be guilty of misconduct, by conversation and intercourse with others during the progress of the trial, sufficient to merit reprimand or punishment, a new trial will not be granted, if it appear that there was no abuse, and no injury resulted to the defendant ” (losing party) “ from such misconduct.”
*83 McKnight and the juror differ as to what did transpire' between them. Taking McKnight’s statement as the true' version, and it is the stronger of the two statements, we gather from it that books and papers were used in the trial that were not put in the possession of the jury; and the juror wanted to know how to obtain them, as he did not know how to get along without them. McKnight does not appear to have been connected in any way with the parties, or interested in the case. He did not act or speak in behalf of the successful party, nor to have, in any degree, influenced the mind of the juror. He made, to the juror’s question, a very judicious answer. While the conduct of the juror was clearly improper, and such as would ordinarily call for animadversion from the court, we wholly fail to discover from the testimony such misconduct as prevented a fair trial or an honest verdict.
A different ruling would not operate justly. It would punish an innocent party for no offense of his. When the juror is guilty of violating both oath and duty by improper conduct, he should be made to answer for it, and not an innocent party, in no way accessory to the misconduct of the juror.
To arrest from a party a verdict, which appears to have been honestly obtained, after long and expensive litigation, merely because a juror has been so indiscreet as to speak of the case to a stranger, when ho could have received no advantage from that improper act of the juror, and the opposite party no prejudice, would be scarcely compatible with the due administration of judicial justice. When, however, the prevailing party, or his agent or friend, has approached a juror during the trial, or while he has the case under consideration, and addressed the juror on the subject of the action, the verdict should be set aside. He should be made, in that way, to feel the punishment of violated law. 2 Hale’s P. C. 308.
So, if it appears to the court that the unsuccessful party either did, or probably might have sustained injury from the improper conduct of the juror, a new trial should be *84 granted, to the end that a verdict may be obtained, freed from suspicion that one party has been favored, or the other prejudiced by the misconduct of a juror. The court will seek, as far as practicable, to preserve tbe purity of trials by jury, and the books show that many learned judges have thought the surest way to attain that end is by setting aside every verdict where a juror has spoken of the case contrary to law. This is hardly the spirit of our statute, and would fail lo attain the desired result. The juror suffers nothing by setting aside the verdict. The successful party alone is injured ; and, if innocent, should not be made to suffer.
Upon the whole, we think the rule that will best secure the desired result would be, that, in cases where the irregularity or misconduct of the juror appears to have operated in favor of the successful party, and as a necessary consequence, to the prejudice of the unsuccessful party, a new trial should be granted. On the other hand, where it appears that it has produced no such result, the verdict should be permitted to stand.
Any attempt on the part of the prevailing party, his agent, or attorney, on or over the jury, resulting in an irregularity or misconduct of the jury, would be cause for a new trial; but in a civil action, where the prevailing party is wholly free from fault, and the irregularity or misconduct of the jury, or a-juror, is free from intention of wrong, and has in no appreciable way affected the verdict, it should not be disturbed.
II. We are next ,to cousider whether the judgment of reversal can be supported on other grounds.
There is but one other view of tbe case on which the judgment of reversal might be sustained, did it exist: Is the verdict unsupported by the evidence ? Even this question can not be reached under the rules of law. On looking into the bill of exceptions, we find it substantially stated that it contains all the evidence introduced on the trial to the jury. Yet, on á careful examination of its contents, we are clearly satisfied it fails to bring up all the ev *85 idence used on the trial, which was deemed material and admitted in the trial court. We will not stop to point out its defects, for they are manifest. But if we are mistaken in this, and if we weigh and consider all the evidence found in the bill, we can not hold, under well established rules governing this class of cases on review, that the verdict is not supported by the evidence.
We find no substantial error in the judgment of the court of common pleas in refusing to award a new trial.
It follows that the judgment of the district court must be reversed ; and this court now proceeding to render the judgment the district court should have rendered, affirms the judgment of the court of common pleas.

Judgment accordingly.